Case number 22-3743, Walid Abdulahad v. Merrick Garland. Oral arguments not to exceed 15 minutes per side. Ms. Nadia Aguilana and Mr. Jeremy Rupert for the petitioner. Good morning, your honors. Nadia Aguilana from the University of Minnesota Law School's Federal Immigration Litigation Clinic. Pursuant to this court's practice rules, it is my privilege to introduce my law student, Jeremy Rupert, who will be presenting oral argument for Mr. Abdulahad. And if I may take a moment to also acknowledge my other student, Chloe Chambers, who although will not be presenting oral argument, has been an integral part of Mr. Abdulahad's case. Thank you. Well, good morning, your honors. May it please the court. My name is Jeremy Rupert for petitioner Mr. Walid Abdulahad, and I'd like to reserve four minutes for rebuttal. Fine. Mr. Abdulahad is an Iraqi Qadian Christian, churchgoer, and family man who came to the United States over 25 years ago. He was in fear of government-backed groups that the board itself acknowledges now regularly commit torture. This court should reverse and remand because the board committed three distinct legal errors when it denied Mr. Abdulahad's motion to reopen. First, the board compared his motion evidence to that of his previous motions instead of to the evidence at the merits hearing. Second, the board misapplied the standard for a particular risk of torture. And third, the board failed to analyze each of Mr. Abdulahad's six claims of torture, both independently and in the aggregate. These legal errors matter in light of the outcome-changing record evidence Mr. Abdulahad presents. I'll address each argument in turn. First, the proper standard for a motion to reopen based on changed country conditions is whether the motion evidence is new, material, and previously unavailable. It's undisputed that the agency must compare evidence submitted with the motion to reopen to country conditions which existed at the time of the merits hearing. That's the board's holding in SOIG, which all parties, including the board, cite and affirm in their briefing or in the BIA decision. And what year was the merits hearing? The merits hearing was in 2017-2018, and Mr. Abdulahad's most recent motion to reopen came before the board in 2022. The board failed to compare to that 2017-18 merits hearing, and had the board applied the proper legal comparison, it would have held that the record demonstrates a material change in country conditions. As one example, the immigration judge and the board affirmed that at this 2017-18 merits hearing that PMFs, or Popular Mobilization Forces, sectarian militias that exist in Iraq, at the time of the merits hearing, they primarily pursued suspected ISIS members. That has materially changed. The record now demonstrates that PMFs target anti-government protesters, religious minorities, including Chaldean Christians, and those with perceived ties to the United States. That comes from the record at page 90, 390, and 428. Additionally, PMFs, at the time of the merits hearing, did not commit torture with government acquiescence. However, now, PMFs are funded by the government, and the record reflects at points they act at the direction of the Iraqi Prime Minister himself. That's at the record at page 428. The government is willfully blind to these abuses, and the PMFs act with impunity. That's at the record at page 299, 307, and 428. And this change matters. Beginning in October 2019, PMFs killed 500 and injured 20,000 more, suppressing political uprisings from protesters, including religious minorities, like Christians. And these protesters were calling for the disbandment of the PMFs themselves and a change in government in Iraq. And that comes from the Department of State report, the Iraq 2020 Human Rights Report, which Mr. Abdullah had submitted in his July 2021 supplement that the board remanded back to this court to consider, and the board did not do so. I suppose the argument could be made that we have an eight-page detailed board order here going through a lot of evidence. So what would you point to in the board's order that shows these points that you're making? That they're misapplying the law and not going back to the merits hearing? The board in its decision itself, while it does write a rather lengthy opinion, that opinion is devoid of any mention of the merits hearing itself or any findings of the merits hearing. And again, the two findings that I've posited as an example, that PMFs were primarily pursuing ISIS members and that they were not committing torture at the acquiescence of the government, those have both changed. The board both didn't address either of those points or any of the other points that may have been combed through, given a proper analysis of the record itself and a comparison to the merits hearing. Rather, the board holds that there is a continuation of poor country conditions, and continuation simply isn't the standard. And that comes from the Pablo Lorenzo case that this court held, where changed country conditions can exist, where treatment of an already targeted group escalates. Pablo Lorenzo involved a foreign national of Guatemala, who was both indigenous and a land rights activist. And in that case, the board held that because of historical troubles in Guatemala dating back to the 1980s and the Civil War, reflect a continuation of poor country conditions. But this court reversed because it held that escalation of an already targeted group exists. And Mr. Abdulhad presents a case very similar to Mr. Pablo Lorenzo. In fact, perhaps even stronger, because another point that the Pablo Lorenzo decision makes is a point about particularity. And that brings me to my second point, the second legal error that the board made. The board misapplied the legal standard for particular risk of torture. And that standard comes from the board's holding in matter of SV, where it holds that specific grounds must exist that indicate an individual would personally be at risk. But personally at risk doesn't mean there needs to be a list, for example, identifying Mr. Abdulhad for torture. No group that's engaging in torture would keep such a list, and that would create an impossible standard for a petitioner to make. However, in Pablo Lorenzo, facts demonstrating that Guatemala has become increasingly hostile for members of the group, members of indigenous communities or land rights activists, that was enough to find a personal risk of torture in that case. That is, group membership was sufficient. And as I mentioned, Mr. Abdulhad presents arguably a stronger case than Mr. Pablo Lorenzo because Mr. Pablo Lorenzo didn't become a land rights activist until after his time in the United States. So Mr. Pablo Lorenzo couldn't be personally at risk as the board requires to be on a list or have a note. He wasn't a land rights activist in his time in Guatemala. Mr. Abdulhad is undeniably a Chaldean Christian. That's a finding of the IJ. That's not in dispute here. Would your position require then that all Chaldean Christians be at risk of torture in Iraq and therefore must be granted CAT? No, Your Honor. Mr. Abdulhad doesn't ask this court to render a holding that says all Chaldean Christians would be eligible for CAT protection. And in fact, Mr. Abdulhad raises multiple other reasons that this board could find a personal risk of torture. And that brings me to the third error that the board makes, that the board must consider all of the petitioner's claims in the aggregate and it failed to do so here. Mr. Abdulhad presented six different reasons he fears torture from eight different sources. And those six reasons- The board only addressed his Chaldean Christian claim. Is that correct? That is correct. The board, after it cites in a list the six reasons, renders two sentences of analysis, and that comes from the record at page eight or the board's decision at page six. Those two sentences, the first of which misconceptualizes Mr. Abdulhad's claims as a hypothetical chain of events, citing the JFF standard of the board. And the second sentence confusingly admits that Iraqi government officials tortured detainees, but broadly concludes that detention won't occur at a checkpoint. And it only considers Mr. Abdulhad's Chaldean Christian identity in that second sentence. It is perhaps lengthier than other board decisions that we see, but the argument is that it's a repetition of information and not an application of the standard that applies from the earliest date to the changed country conditions. Is it a timing problem of how they apply the test? Yes, Your Honor. And to address that question, I think there are multiple points I'd like to raise, the first of which being the legal standard of comparing to the merits hearing is at issue, and to use your framing of it, timing, the timing issue, comparing the 2021-2022 motion rather to other motions to reopen and not to the 2017-18 merits hearing. But also to address your point about the length of the decision itself, the length does not equal a reasoned analysis, and in that decision it's devoid of applying the proper legal standards, one of which being comparing to the proper merits hearing, another of which applying a misapplication of the particular risk requirement, and also failing to aggregate his risk of torture, which is this third legal error. And had the board aggregated his risk of torture and not instead characterized it as a hypothetical chain of events, Mr. Abdulhad could arguably meet his prima facie burden for a motion to reopen. And as a reminder, that is the burden Mr. Abdulhad has to meet in this case, prima facie eligibility, which demonstrates a reasonable likelihood that the statutory requirements could be met, and that there are issues worth developing upon remand. All of which could have happened here, and one considering especially the claims in the aggregate, that is, should Mr. Abdulhad present multiple independent claims, the board holds in JRGP that it's required to add up those individual probabilities of torture, and if it exceeds 50%, then he could meet his burden. And one of those claims that the board fails to mention, let alone analyze, is his perceived ties to America. Another important claim that he presents, his cutting Christian claim is important, but his American claim is important too, because of the rise of anti-American sentiment. And had the board engaged the record in a way that was in turn with the proper legal standards, it also would have found that. For example, at page 390 of the record, in late 2019, the U.S. Embassy in Baghdad was bombed by PMFs. And in response, the U.S. government ordered all non-emergency personnel to evacuate. And further on in the record at page 430, in early 2020, the Iraqi parliament voted to expel American troops from the country. And when we were discussing the mass political uprisings that happened in late fall of 2019 as well, it is largely believed that the PMFs, the groups that killed the 500, that injured the 20,000 more, believe that Americans were sponsoring those protests. And your position is that the evidence shows that they are now a part of the Iraqi government or their actions are acquiesced? That is correct. By the government? That is correct. The PMFs are now officially underneath the Iraqi government as part of their military forces. Which they were not in the 2017-18 timeframe. That is correct. They were not underneath the government at that time. When did they become part of the government? They became part of the government, I believe, in the 2018 period, late 2018, as reflected in the first instance by the 2020 Human Rights Report. I believe I am into my rebuttal time. If the panel has no further questions, I move forward to addressing the government's arguments. Thank you. Thank you. Good morning. Greg Pennington for the Attorney General, asking the court to deny the petition for review. I'll start with Mr. Abdullahed's argument that the board compared the wrong time periods. The board cited, matter of SYG, that it compares any new and material changed country conditions with evidence during the merits hearing, the final merits hearing. So it cited the right standard. And then it started to dissect all of the evidence that Mr. Abdullahed had submitted. Most of it, the board considered, was not new. It found that some of the evidence was plainly previously submitted. It was previously submitted subsequent to the merits hearing. Correct. But it is our position that if it's been previously considered, it's not new in any sense. If the board has previously considered it, it's not new evidence. But how can you be following the standard that you have to compare the evidence presented, we'll say in 2022, to the evidence at the merits hearing in 2018? How can you be following that standard and doing what you're saying, well, serially this is not new evidence? Well, most of what the board cited was not new, was submitted during the initial appeal from the merits hearing. So that's still a continuation of that merits hearing while it's on appeal with the board. I would say that's still in that time frame. So there was evidence that was not submitted to the original merits IJ, that was submitted to the original merits board? That is correct. I think the 2018 Human Rights Report was submitted, and as a prior panel of this court in denying Mr. Abdulahad's first consolidated petitions noted, that was not new because it was submitted during the appeal. And then most of the other evidence kind of falls in that cumulative category. For example, the board held that some evidence submitted indicated a new travel advisory to Iraq, stating it was a level four warning by the State Department. While that might have been updated travel advisory, there was also a level four travel warning submitted at the time of the merits hearing. The same with the problems with the Iranian-backed militias, the PMFs. Evidence such as that was submitted that there's problems with the PMFs, there's 60 or so disjointed groups that fall under different leaderships, some of these PMFs or militias are Christian-backed, and there was trouble consolidating power under the government with those. But they all did report to the prime minister. The board was basically saying all this evidence was considered by the immigration judge. The immigration judge's opinion in this case, which was upheld by this court, discussed the problems with the PMFs. So this was a longstanding problem. My question is, your opposing counsel argues that you have to look at where there is already a problematic group. You have to look at whether the problems are being intensified. You can't just rely on the fact that the PMF has always been a problem force, a difficulty for the Iraqi government, problems for the Iraqi people. You must look at how that has intensified or gotten worse. Do you agree with that? I do. And I would say that the board looked at that here. So one of the points that Mr. Abdul had raised in his opening argument was that these PMFs are crushing political uprisings. That's like a new thing that the PMFs are doing. But the board addressed that. This is at AR-7. The board was talking about, I think, Mr. Smith's declaration, an updated declaration, saying that while this evidence might be new, that goes to another element that has to be shown to meet that heavy burden for reopening, that the evidence is material. Wouldn't it be material if the PMF had been a rogue entity causing these very kinds of problems in 2018, but by 2022 they were in fact an arm of the Iraqi government? I would say that since 2018, and the board cited these country reports. I kind of expounded a little bit by quoting them in my brief. But since 2018, all of these groups have been under an umbrella of they reported to an element of the Iraqi government. So they've always been reporting to, and while they might not have been able to maintain effective control of these groups, they've always been a part. So this is what the board is saying. This is just basically cumulative evidence. And where it is new, it's not material. Because while they might be doing new things, the PMFs might be crushing anti-Iraqi protests or anti-government protests. The board says at page 7 in the record, there's no evidence that Mr. Abdullah has going to engage in any of that activity. So while evidence has to be new and represent changed country conditions, it can't be duplicative or cumulative. It also has to be material. And if, in fact, the new view of the PMF is that the people that they want to take or to control are people who have lived in America and have American support or American relationships, as opposed to being present in Iraq and involved in the country itself, why doesn't that make a significant difference? I think evidence that shows that these PMFs are more likely than not going to take an Iraqi citizen who has lived in America, detain them, and torture them, that would be material. But I don't think that that kind of evidence has been pointed to in this record. Again, we're kind of relitigating the original merits hearing here. I think that's probably the question for me, and maybe you can enlighten me. It seems to me that the original merits hearing was, in fact, different, and that what we're litigating now is a different system on the ground. And if that's the case, why isn't the difference in that system on the ground with the players who have been involved in Iraq throughout, why doesn't that difference on the ground make a difference in an application for cap protection? Well, I would take the court back a step to what we're reviewing, which is whether the board abuses discretion in denying a motion to reopen. So Mr. Abdullah had presented his case. The board has entertained a second motion, is what we're looking at here, saying that I can now win my case. And so what the board has held is, well, you have to do more than just show new and material evidence, and this goes to my second point in my brief. You have to show and meet a heavy burden that the outcome would be different. So where's the evidence showing that it is now more likely than not I will be tortured? And so two of Mr. Across all of the claims, right? Across all of the claims. And you would agree that they only address the Chaldean Christian claim? I would not agree. The board in its decision listed the six reasons Mr. Abdullah had fears being tortured. Did they discuss any of them except the Chaldean Christian issue? When they were talking about, and I know the board's decision kind of goes on and might be a little disjointed, but I think it can clearly be separated out to, and it did discuss every single piece of evidence that Mr. Abdullah had submitted. It categorized it. When it labeled the evidence, it said either this is not new, because it was previously considered, or it was cumulative and thus not meaningfully new, because it represents the same things that Mr. Abdullah had claimed and presented evidence on in his original merits hearing, or it wasn't material. And so the board went through each piece of evidence and says, after listing why he fears he's going to be tortured, and when it gets to the materiality portions of its decision, it talks about, well, none of this report, for example, the 2020 OSAC report, the Operational Safety and Crime Report for Iraq by the State Department, it goes on to say that, well, you know, these might present some new conditions, but nothing in these reports say it's more likely than not that a deportee, an Americanized Iraqi deportee, a Chaldean Christian, any of the reasons Mr. Abdullah had, it just doesn't talk to those. So it's not material. Is it almost impossible for someone such as Mr. Abdullah had to be able to show that it is more likely than not that he will be tortured? Is it impossible? Yeah. No. So what kind of more evidence would he need to show that? Well, I mean, for example, he's attached some decisions to his reply brief that show applications for torture relief being granted. Those are not before the court because they're not part of the administrative record. When I briefly looked over those, one of them had an expert named Dr. Ramadan from, I think, the University of Pennsylvania that testified. And if you look at the IMJ's decision there, they found that expert's testimony was persuasive enough to grant cat relief to that individual. The expert liked the expert. Wasn't there an expert in this case also? Nobody testified. It was a war of declarations, basically. And this was when all of the Iraqis were starting to file these cat claims and they were coming up through the courts. He was attached three that fined four and then adds Zahar to it also, all of which provide expert testimony about the very conditions that he's claiming, correct? Right. But his was inadequate in some way? Well, if we go back to the merits hearing before the immigration judge in 2018, those same declarants submitted declarations and the Department of Homeland Security submitted several declarations from their experts. And so it was basically competing declarations that the immigration judge was considering. And in Mr. Abdulahad's case, the IJ found that the government's experts were more persuasive based on their being on the ground more recently in Iraq. And, again, this court, a prior panel of this court, upheld the decision of the immigration judge to deny protection under the Convention Against Torture in Mr. Abdulahad's case. So I want to go back to the second two arguments that Mr. Abdulahad raised regarding the particularized risk and the aggregate risk and reiterate that the board was not reviewing the denial of protection under the Convention Against Torture in the first instance. The board was reviewing an untimely, number-barred motion to reopen where the movement had, Mr. Abdulahad had, a heavy burden to establish that he has evidence that would likely change the outcome. And the board held none of the evidence that it reviewed established that particularized risk that it's more likely or not he's going to be tortured. And it looked in the aggregate. It didn't abuse its discretion. This was a well-written, lengthy board decision that considered all of the evidence and we would ask the court to deny the petition for review. Thank you. Thank you. Well, thank you, Your Honors. I'd like to address three different points that the government made, the first of which being Mr. Pennington is correct that everybody has cited the correct standard for when to compare to the preferred change country condition to the merits hearing. SYG is that standard and everybody has cited it. However, the application of that standard is what is in question today. The board itself failed to apply the SYG standard. And instead, in the government's briefing, the government wishes to write the decision the board itself never wrote. It writes an extensive analysis where it picks and chooses different pieces of evidence that the board did not address and makes an argument that the board doesn't make as to why those pieces of evidence matter. However, when looking at the evidence itself and characterizing it instead as a cumulative piece of evidence of previous motions or as a continuation, as Judge Straunch identified, the standard is intensification and escalation, rather from Pablo Lorenzo, and whether conditions have gotten worse. If the board were to continue to compare rather to other motions to reopen rather than merits hearing, it would find perhaps a continuation because those time periods are so short. Whereas if we take the broader approach that is the standard of this court when compared to the merits hearing, in a country where conditions are rapidly changing, very quickly, 2017-2018 was five years ago now, which is a long amount of time in a country that is so unstable like Iraq. And, in fact, the PMFs, as the IJ found, do not acquiesce to the government. That's page AR 1117 of the record. Is there a case where Mr. Abdullahad has shown that he is personally at risk of torture? He has shown he is personally at risk of torture, Your Honor, and that personally at risk goes back to the standard of what does personally at risk mean, and group membership is sufficient. This court has held that in Pablo Lorenzo, but also cases like Yuyan Zhang, which involves Chinese Christians, Thaya Parin, which is a Sixth Circuit case which involves people of Tamil identity in India, and the board itself holds that in matter of GA. So group membership is undoubtedly the standard for a personal risk. Mr. Abdullahad, as you mentioned, Judge Moore, argued we couldn't show such a personal risk that he'd be on a list to be so personal to him, but rather he's part of the group. And I would like to note that Iraqi Chaldean Christians are asserting forward-looking claims. They're all relying on the same government reports to do that. So if he couldn't show a personal risk of torture through this group membership standard that this court has held, he arguably couldn't do it at all. And that brings me to the third point. The government argues that we are re-litigating the original merits hearing, and that is simply not the case. All Mr. Abdullahad asks is to remand back to the board on this motion to reopen so the board may consider whether or not he has met his standard for prima facie eligibility to reopen his case. And if they do, Mr. Abdullahad will go before an IJ, and he believes that the record evidence that he submits will lead to a grant of cap protection, and he will no longer be before the board or before this court again. That prima facie standard is from Hernandez-Perez v. Whitaker. And if this board has any doubts, matter of zakah, which Mr. Abdullahad presents as attached to his briefing, was presented before the very same IJ that denied Mr. Abdullahad relief in the first instance. And in that case, the IJ found the record evidence compelling enough to grant protection under the Convention Against Torture. Is that something that we should compare what an IJ did in another person's case to this case? No, Your Honor. Mr. Abdullahad points to matter of zakah for two reasons, mostly the fact that the legal errors that the board make are not harmless, that had the board applied the proper legal analysis, the proper standards, whether it be comparing to the merits hearing, the particular risk requirement, or aggregating his risk, had the board done that, Mr. Abdullahad could present a prima facie case of eligibility, and zakah demonstrates that the evidence does matter itself. I see that I'm out of time. I'd like to thank the court for this time and thank the government for its arguments. Thank you. Thank you both for your argument. I want to particularly thank Mr. Ruppert because the law students who have worked on this case have done an admirable job, including your argument here today, but also in your briefing. And the government has done a great job, too. But it's impressive to have law students who perform as wonderfully as the University of Minnesota Law School has performed throughout the argument briefing and oral argument today. And obviously you can tell that you are welcome in the federal courts for your advocacy for your clients. You've done an admirable job. And, of course, this case will be submitted, and in due course we will issue a decision.